# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**RICKY ALLEN SMITH, SR.,**

Plaintiff,

Civ. No. 3:14-cv-01210-PA

v.

**OPINION & ORDER**

**CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,**

Defendant.

PANNER, District Judge.

Plaintiff Ricky Allen Smith, Sr. ("Plaintiff"), seeks judicial review of the final decision of

the Commissioner of Social Security ("Commissioner") denying disability benefits under Title II

and supplemental security income under Title XVI. For the reasons set forth below, the decision

of the Commissioner is REVERESED and this case is REMANDED for further administrative

proceedings.

## BACKGROUND

Born in July 1961, Plaintiff was 47 years old on the original alleged disability onset date

of August 30, 2008. Tr. 31. Plaintiff now asserts an amended onset date of July 31, 2010. Pl.'s

Br., at 1 n.1. Plaintiff has limited education and is able to communicate in English. Tr. 31.

Plaintiff filed for disability insurance benefits on July 31, 2010 and for supplemental security

income on November 19, 2010. Tr. 20. Plaintiff's claims were denied initially and upon review.

*Id.* At Plaintiff's request, a hearing was held before Administrative Law Judge ("ALJ") Wayne

Araki on December 18, 2012. *Id.* On January 24, 2013, the ALJ issued a decision finding

Plaintiff not disabled. Tr. 32. On July 3, 2014, the Appeals Council denied review, making the

ALJ's decision the final agency decision. Tr. 1.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20

C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following

series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess

and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled.    20    C.F.R.    §§ 404.1520(a)(4)(v);    416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett,* 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not performed substantial gainful activity since the original alleged onset date of August 30, 2008. Tr. 22. At step two, the ALJ found that Plaintiff had the following severe impairments:

personality disorder, bipolar disorder, and back disorder. *Id.* At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment. Tr. 22-23.

In assessing Plaintiff's RFC, the ALJ found that Plaintiff had the residual functional capacity to perform light work with the following limitations: no climbing of ladders, only frequent stooping, crouching, kneeling, balancing, crawling, and climbing on stairs, only frequent fingering. Tr. 24. The ALJ found that Plaintiff was able to remember, understand, and carry out instructions or tasks generally required by occupations with a specific vocational preparation ("SVP") of one, two, or three. *Id.* Plaintiff was to have no more than occasional interaction with coworkers, supervisors, or the general public and Plaintiff's occupation cannot require more than limited reading as part of the job tasks. *Id.*

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work. Tr. 30. At step five, the ALJ found that Plaintiff had the RFC to perform work as a production assembler, car wash worker, and service station attendant. Tr. 31-32. Accordingly, the ALJ found Plaintiff not disabled. Tr. 32.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by: 1) failing to assess Plaintiff's sleep apnea and learning disorder as severe impairments; 2) failing to provide adequate grounds for discounting Plaintiff's testimony; 3) failing to properly assess and weigh the medical opinion evidence; and 4) failing to properly assess Plaintiff's RFC.

### I.    Plaintiff's Credibility

When gauging a claimant's credibility, an ALJ must engage in a two-step process. 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree

of the alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, if such evidence exists, barring affirmative evidence of malingering,[1] the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). A general assertion that the Plaintiff is not credible is insufficient. The ALJ must identify what testimony is not credible and what evidence undermines the claimant's allegations. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Not every reason provided for discrediting a claimant's testimony must be upheld, so long as the remaining reasons are valid. *Carmickle v. Comm'r*, 533 F.3d 1155, 1162-63 n.4 (9th Cir. 2008).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Tr. 25. However, the ALJ found Plaintiff's testimony about the intensity, persistence, and limiting effects of those symptoms not credible for the following reasons: 1) the overall record does not support his claim of disability; 2) lack of treatment for Plaintiff's back complaints; 3) lack of candor regarding Plaintiff's use of medical marijuana; 4) inconsistent statements regarding use of alcohol; 5) Plaintiff's drug-seeking behavior; and 6) the record suggested that Plaintiff left his last job for reasons unrelated to disability. Tr. 25-27.

On the first issue, the ALJ found that "[w]hile the claimant has some limitations due to back problems, the overall record does not support his claim of disability." Tr. 25. Plaintiff contends that the ALJ applied the wrong standard and that Plaintiff need only establish some causal connection between his back condition and some level of symptoms. The Ninth Circuit has held that "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant

---

[1] The ALJ found no evidence of malingering in this case.

factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). In this case, the ALJ did not rely solely on the medical evidence, but considered it as a relevant factor in his broader credibility analysis. Plaintiff asserted disabling back pain contributed to his inability to work. Tr. 219. The ALJ noted a number of instances in the record where medical exams revealed relatively benign examination findings with regard to Plaintiff's back problems and determined that they did not corroborate Plaintiff's subjective symptom testimony. Tr. 25-26; 304; 366; 389. I conclude that it was not error for the ALJ to consider the objective medical evidence in assessing Plaintiff's credibility and that the ALJ's conclusions on this issue are supported by substantial evidence.

On the issue of Plaintiff's lack of treatment for his back problems, Plaintiff asserts that the ALJ's findings were not supported by substantial evidence. Lack of treatment is a valid consideration when assessing a claimant's credibility and can constitute "powerful evidence" regarding the extent of the claimant's pain. *Burch*, 400 F.3d at 681. Upon review of the record, I find no indication of Plaintiff receiving treatment for back pain after 2011. At the hearing, Plaintiff testified that he was not taking prescription medication for his back pain. Tr. 54. Furthermore, in May 2011, Plaintiff declined a referral for epidural injections to relieve his back pain. Tr. 400. I conclude that the ALJ's findings on this issue were supported by substantial evidence.

On the issue of Plaintiff's use of marijuana, a "lack of candor" regarding the use of drugs and alcohol can be used to support a negative conclusion about a claimant's credibility with regard to testimony about his or her symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). In this case, Plaintiff testified that he was using medical marijuana to control his back pain. Tr. 53-54. The ALJ noted that there was no evidence in the record to indicate that Plaintiff

had ever been prescribed marijuana. Tr. 26. Plaintiff disputes this, pointing to medical records where providers recorded that Plaintiff had reported to them that he had a medical marijuana card. Tr. 362; 368; 393. This does not demonstrate that Plaintiff actually had a medical marijuana card. In fact, the record contains contrary evidence suggesting that Plaintiff wanted a medical marijuana card in 2011 and that his provider refused to sign it. Tr. 397-98 ("Wants medical mj card signed, smokes all day . . . Cannot sign marijuana card. I also suggested that marijuana could be causing his poor appetite and recommended that he try to cut back."). The ALJ further noted that Plaintiff had reported using marijuana regularly for thirty years and that he had begun long before the onset of his back problems. Tr. 26; 368; 393. I conclude that the ALJ properly considered Plaintiff's inconsistent statements regarding his marijuana use and that his findings were supported by substantial evidence.

Similarly, Plaintiff's inconsistent statements about his use of alcohol may be considered in assessing his credibility. *See Thomas*, 278 F.3d at 959. In this case, Plaintiff testified at the hearing that he last drank alcohol "over ten years" previously. Tr. 60. In 2010, Plaintiff reported to his physician that he used alcohol "occasionally." Tr. 278. In 2011, Plaintiff "insisted two or three times that he does not drink and has never had any alcohol," but "eventually admitted he drank either last Christmas or five years ago." Tr. 367-68. Plaintiff asserts that these inconsistencies are due to memory problems and not an intentional effort to deceive, but that explanation does not support the completely contradictory assertions Plaintiff made during the single examination in 2011. I find that the ALJ's conclusion on this issue is supported by substantial evidence in the record.

The ALJ also noted that Plaintiff engaged in drug-seeking behavior. Tr. 26-27. Drug-seeking behavior is a valid consideration in assessing a claimant's credibility. *Lewis v. Astrue*,

238 F. App'x 300, 302 (9th Cir. 2007); *Coffman v. Astrue*, 469 F. App'x 609, 611 (9th Cir. 2012). In this case, when a provider declined to prescribe narcotics for chronic pain, Plaintiff responded "that's fine.. i'll [sic] just buy it elsewhere." Tr. 354. On another occasion, Plaintiff reported to a physician that he needed a refill on his narcotic prescription because he was taking three times his prescribed dose. Tr. 315. On yet another occasion, Plaintiff became verbally abusive towards a treatment provider when she refused to prescribe more than four tabs of narcotics per day. Tr. 400. Plaintiff "stormed out" of the examination and was terminated by the provider. *Id.* Plaintiff does not assert that the ALJ erred in making this finding and I conclude that the finding is supported by substantial evidence in the record.

Finally, the ALJ noted that the evidence suggests that Plaintiff left his job for reasons unrelated to his disability. If the record shows that a claimant left his or her last job because they were "laid off," rather than because of an injury, that is a sufficient reason to disregard the claimant's testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). In this case, Plaintiff reported to a physician that he had stopped working because "he couldn't stand the pain anymore." Tr. 361. However, Plaintiff told the agency that he left "for other reasons" because "I was layed [sic] off." Tr. 219. At the hearing, Plaintiff testified that he was laid off because "the job was winding down" and "there was no more work." Tr. 46-47. I conclude that the ALJ's findings on this issue were supported by substantial evidence.

In sum, the ALJ provided at least one clear and convincing reason supported by substantial evidence for rejecting Plaintiff's subjective symptom testimony. Accordingly, this Court need not discuss the ALJ's other reasons. *See Carmickle*, 533 F.3d at 1162-63. I conclude that the ALJ properly discounted Plaintiff's testimony.

## II.    Medical Opinion Evidence

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is given more weight than the opinion of a non-examining physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 632; 20 C.F.R. § 404.1527(c). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

In this case, Plaintiff contends that the ALJ erred in rejecting the opinions of Drs. Anderson and Rethinger, the State Agency psychological consultants; Dr. Adler, the State Agency examining psychologist; Dr. Ramsthel, an examining physician; Dr. Mason, a treating orthopedist; and Dr. Warrington, Plaintiff's treating physician.

### a.    State Agency Psychological Consultants

Dr. Dorothy Anderson is a State Agency psychological consultant who provided a Mental Residual Capacity Assessment for Plaintiff in March 2011. Tr. 100-01. Dr. Anderson opined that Plaintiff could carry out routine tasks that were "not complex [due to] learning [disorder]." Tr. 101. Dr. Anderson determined that Plaintiff could interact with a supervisor, but should have

no contact with the public and only occasional contact with coworkers due to Plantiff's antisocial personality. *Id.* Dr. Paul Rethinger, another State Agency psychological consultant, also provided a Mental Residual Capacity Assessment for Plaintiff in June 2011. Tr. 115-16. Dr. Rethinger's assessment of Plaintiff was identical to Dr. Anderson's in terms of Plaintiff's ability to carry out routine, "not complex" tasks, as well as in terms of Plaintiff's ability to interact with the public and coworkers. *Id.*

The ALJ gave "great weight to the opinions of Dr. Anderson and Dr. Rethinger because they are consistent with the overall evidence." Tr. 30. The ALJ did not, however, credit Drs. Anderson and Rethinger's findings as to Plaintiff's ability to interact with the public. *Id.* Instead, the ALJ found that Plaintiff could have occasional interaction with the public "based on the claimant's social functioning," discussed elsewhere in the ALJ's opinion. *Id.*

Plaintiff contends that the ALJ erred in rejecting the consultants' opinions about Plaintiff's ability to interact with the public. First, Plaintiff asserts that the ALJ's finding was vague and conclusory. Second, Plaintiff argues that the ALJ failed to recognize that no treating or examining psychologist disagreed with the consultant's restrictions on interaction with the public. Finally, Plaintiff contends that the ALJ's reasoning for discounting the assessed limitations is not supported by substantial evidence and that the ALJ impermissibly substituted his own lay opinion for that of the psychological experts.

It is not necessary to determine whether the ALJ erred in rejecting the restriction on public interaction because the ALJ ultimately determined that Plaintiff could perform the duties of a production assembler, which does not require public interaction. *Dictionary of Occupational Titles* ("DOT") 706.687-101, *available at* 1991 WL 679074. The Commissioner argues that even if the other two possible jobs are eliminated, there are enough production

assembler jobs both in Oregon and in the national economy to constitute "significant numbers" and satisfy the Commissioner's burden at step five. Plaintiff concedes that "production assembler" does not require public interaction, but argues that the position still requires interaction with coworkers, but the record indicates that both of the consulting psychologists found that Plaintiff was able to have occasional interaction with coworkers. Tr. 100-01; 115-16.

The Ninth Circuit has determined that a job exists in "significant numbers" when there are 2,500 in the claimant's state and 25,000 nationally. *Gutierrez v. Comm'r*, 740 F.3d 519, 527-29 (9th Cir. 2014); *see also Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986) (a job exists in significant numbers if there are between 3,750 and 4,250 such jobs). In this case, the VE testified that there were 6,600 production assembly positions in Oregon and 315,000 in the national economy. Tr. 75. Accordingly, I conclude that any error in rejecting the psychological consultants' restriction on public interaction was harmless because the ALJ identified a job which does not require public interaction and which exists in significant numbers in both Oregon and the national economy.

### b. Dr. Adler

Dr. John Adler performed a psychological examination of Plaintiff in June 2012. Tr. 367-71. Dr. Adler expressed some doubt about Plaintiff's bipolar diagnosis and suggested that anti-social personality disorder might be a more correct assessment. Tr. 370. Dr. Adler also noted "signs consistent with [Plaintiff's] report of cognitive skill impairments" and assessed Plaintiff as having a "[l]earning disorder, unspecified." Tr. 370-71.

The ALJ gave "partial weight" to Dr. Adler's opinion for two reasons. First, the ALJ determined that Dr. Adler's opinion was vague as to the severity of Plaintiff's limitations. Tr. 30. Second, Dr. Adler assessed Plaintiff as having a learning disorder and ruled out bipolar

disorder, despite the fact that "the claimant performed generally well on the mental status examination." *Id.* The ALJ noted that he had accounted for Plaintiff's cognitive limitations by restricting him to jobs with an SVP of three or less and require no more than limited reading. *Id.*

### 1. Learning Disorder

Plaintiff asserts that the ALJ erred in rejecting Dr. Adler's diagnosis of a learning disorder in favor of his own lay opinion. The ALJ is not a medical expert and may not make his own medical assessment beyond that demonstrated by the record. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). In this case, the Commissioner provides no support for the ALJ's finding that Plaintiff performed "generally well" on the mental examination. It appears to be based solely on the ALJ's own lay assessment of Dr. Adler's report. Furthermore, Dr. Adler was not alone in assessing Plaintiff with a learning disability. The psychological consultants Drs. Anderson and Rethinger also included a learning disorder in their assessment of Plaintiff's limitations. Tr. 100; 115. The ALJ gave "great weight" to Drs. Anderson and Rethinger's assessment of Plaintiff's cognitive limitations. Tr. 30.

Based on this record, I conclude that the ALJ failed to provide clear and convincing reasons for rejecting Dr. Adler's uncontradicted opinion. As noted by the ALJ, however, Dr. Adler's opinion is vague with regard to how limited Plaintiff was as a result of the assessed cognitive limitations. Tr. 30; 369-71. I will address whether the ALJ properly accounted for any limitations imposed by Plaintiff's learning disorder in my discussion of the ALJ's step two findings.

### 2. Math Restriction

Plaintiff asserts that the ALJ erred in rejecting Dr. Adler's opinion as to Plaintiff's cognitive limitations with mathematical calculations. Plaintiff asserts that this was harmful error

because the VE identified car wash attendant, DOT 915.667-101, *available at* 1991 WL 687869, as a possible occupation. Car wash attendant requires a level 2 math ability. Plaintiff contends that level 2 math would have been precluded by Dr. Adler's assessment of Plaintiff's cognitive limitations. *See* Tr. 273; 370-71.

It is not necessary to determine if the ALJ erred in assigning only partial weight to Dr. Adler's opinion regarding Plaintiff's math limitations because, as previously noted, the VE identified production assembler, which only requires level 1 math.[2] DOT 706.687-010, *available at* 1991 WL 679074. As previously discussed, production assembler jobs exist in significant numbers both in Oregon and in the national economy. Any error in assessing Plaintiff as able to perform level 2 math is therefore harmless.

### c. Dr. Ramsthel

Dr. Donald Ramsthel examined Plaintiff in March 2011. Tr. 361-64. Dr. Ramsthel opined that Plaintiff could walk or stand for one hour at a time, translating to four hours out of an eight-hour shift, and that Plaintiff could sit for two hours, or five to six hours in an eight-hour shift. Tr. 364. Dr. Ramsthel also determined that Plaintiff could lift and carry ten pounds frequently and ten to twenty pounds infrequently. *Id.*

The ALJ gave "significant weight" to Dr. Ramsthel's opinion regarding Plaintiff's ability to lift and sit. Tr. 28. The ALJ did not credit Dr. Ramsthel's opinion as to Plaintiff's ability to stand or walk because it appeared to be based on Plaintiff's subjective report. *Id.* The ALJ also noted that Dr. Ramsthel did not have the benefit of reviewing Plaintiff's x-rays, which showed only minimal degenerative joint disease in Plaintiff's lumbar spine. *Id.* Plaintiff contends that

---

[2] The VE also identified sales attendant, DOT 299.677-010, *available at* 1991 WL 672643, as a possible occupation under Plaintiff's RFC. Like production assembler, sales attendant requires only level 1 math. Sales attendant does require public interaction, however.

Dr. Ramsthel based his opinion on objective findings and a review of Plaintiff's medical records, rather than on Plaintiff's subjective symptom complaints.

As previously discussed, the ALJ properly discounted Plaintiff's subjective symptom testimony. "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162. "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Id.*

In this case, the ALJ noted that Dr. Ramsthel's clinical findings were not substantial. Tr. 28. Dr. Ramsthel noted that Plaintiff stood with level shoulders and hips and that he had a "normal tandem pain free and reciprocating gait." Tr. 363. He could rise on his heels and toes and perform a full squat. *Id.* Hips, knees, ankles, shoulders, wrists, fingers, and thumbs were all normal. Tr. 363-64. Plaintiff had normal flexion, extension, and lateral flexion in his dorsolumbar spine, but lacked 2" of touching the floor and there was "shaking involved with each end range of motion." Tr. 363. There was some restriction on Plaintiff's straight leg raising, "with tightness in the hamstrings as the limiting factor." *Id.*

Because these clinical observations are not consistent with the level of restriction found by Dr. Ramsthel, the ALJ reasonably concluded that the level of restriction was based on Plaintiff's subjective complaints. Plaintiff also asserts that Dr. Ramsthel based his opinion on a detailed review of Plaintiff's medical records. That conclusion is not supported by Dr. Ramsthel's report, which contains only a cursory recitation of Plaintiff's medical history. Tr. 361. I conclude that the ALJ did not err in weighing Dr. Ramsthel's opinion.

### d. Dr. Mason

Dr. Jeff Mason wrote three letters regarding Plaintiff's ability to work in January, February, and July 2006. Tr. 403-408. Dr. Mason opined that Plaintiff was "not suitable for moderate or heavy work" and that he would "benefit from finding some guidance in finding employment in the sedentary-to-light category." Tr. 404.

"Medical opinions that predate the alleged onset date of disability are of limited relevance." *Carmickle*, 533 F.3d at 1165. The ALJ gave Dr. Mason's opinion little weight, noting that it was issued two years before the then-alleged onset date.[3]  Tr. 28 n. 3. Furthermore, as the Commissioner points out, Dr. Mason's opinion was undermined by Plaintiff's subsequent work history. From March 2007 to August 2008, Plaintiff reported that he worked as a "painter/laborer," during which time he which time he would stand and walk for eight hours per day and lift 100 pounds. Tr. 229. I conclude that the ALJ gave adequate reasons to discount the opinion of Dr. Mason.

Even if the ALJ did err in rejecting Dr. Mason's opinion, any error was harmless. Dr. Mason opined that Plaintiff would benefit from finding work in the "sedentary-to-light category." Tr. 404. All of the potential jobs identified by the VE fell within the light category. Tr. 31-32.

### e. Dr. Warrington

Dr. Tom Warrington was Plaintiff's treating physician from August 2010 to November 2010 and again from March 2012 through at least December 2012. Tr. 409. Dr. Warrington diagnosed Plaintiff with chronic back pain, gastroesophageal reflux disease, obstructive sleep apnea, restless leg syndrome, diabetes, status-post video-assisted thoracocscopic surgery, chronic

---

[3] Plaintiff now asserts an amended onset date of July 31, 2010. Dr. Mason's most recent letter was issued on July 13, 2006, more than four years prior to Plaintiff's currently alleged onset date. Tr. 403.

obstructive pulmonary disease, bipolar disorder, and memory problems. Tr. 29; 409. Dr. Warrington assessed Plaintiff as having the following limitations: he can lift no more than 10 pounds, occasionally; he can stand or walk for fifteen minutes at a time or one hour in an eight-hour shift; he can sit for one to two hours at a time or five hours in an eight hour shift; he can never climb, balance, stoop/bend, kneel, crouch, crawl, or reach; he can only occasionally handle; and frequently finger and feel. Tr. 410. Dr. Warrington opined that Plaintiff had marked limitations in concentration, persistence, and pace, as well as social functioning and activities of daily living. Tr. 411. Dr. Warrington also found that Plaintiff's attention and concentration would be impaired for 30-40% of the work day and that his impairments would cause him to miss at least two full workdays per month. Tr. 412.

In the opinion, the ALJ stated that Dr. Warrington had not examined Plaintiff since October 2010. Tr. 30. This finding was consistent with the record before the ALJ, but the Appeals Council accepted additional medical reports from Dr. Warrington which are now part of the record. *See Brewes v. Comm'r*, 682 F.3d 1157, 1163 (9th Cir. 2012). Accordingly, I consider these new exhibits, which establish that Dr. Warrington was Plaintiff's treating physician in November 2010 and again from March 2012 through at least December 2012, in my review of the ALJ's decision.

The ALJ gave a number of reasons for discounting Dr. Warrington's opinion. First, the ALJ found that "while I agree that the claimant has some back problems, the record contains no evidence of any significant treatment, complaints, or limitations due to gastroesophageal reflux disease, obstructive sleep apnea, restless leg syndrome, diabetes, or chronic obstructive pulmonary disease." Tr. 29. Next, the ALJ found that Dr. Warrington's treatment notes did not support the degree of limitation assessed. *Id.* Third, the ALJ determined Dr. Warrington's

opinion was inconsistent with the imaging from March 2011 that showed only minimal degenerative changes in Plaintiff's back. *Id.* Fourth, the ALJ found that Dr. Warrington's opinion was inconsistent with the overall examination findings in the record. *Id.* Fifth, the ALJ found that Dr. Warrington's opinion relied on Plaintiff's subjective complaints, which were not reliable. Tr. 29-30. Next, the medical record did not support Dr. Warrington's finding of marked limitations in concentration, persistence, pace, social function, or activities of daily living. Tr. 30. Finally, the ALJ found that there was minimal evidence supporting Dr. Warrington's conclusion that Plaintiff's attention and concentration would be impaired for 30-40% of the time and Dr. Warrington provided no basis for opinion that Plaintiff would miss at least two workdays per month. Tr. 30.

Plaintiff asserts that the ALJ erred in two principal ways. First, Plaintiff asserts that the ALJ erred in rejecting Dr. Warrington's assessment of sleep apnea and COPD. In particular, the ALJ noted that Plaintiff "has not undergone a workup for sleep apnea and there is no evidence that he requires a CPAP machine." Tr. 29. This conclusion is not supported by substantial evidence. The record indicates that Plaintiff underwent a sleep study in November 2011 which resulted in a recommendation that Plaintiff use a CPAP machine. Tr. 441; 443. The record also shows that Plaintiff received the CPAP machine and was committed to using it. Tr. 432. These records were not before the ALJ, although they were submitted to the Appeals Council. Tr. 5. Dr. Warrington's treatment notes reflect an ongoing concern with Plaintiff's difficulty sleeping. Tr. 416; 418; 429; 431; 432; 434; 437; 439; 441; 443. Dr. Warrington opined that Plaintiff's conditions result in an inability to sleep, which leaves him somnolent during the day. Tr. 412. Dr. Warrington believed that this somnolence would result in severe limitations to Plaintiff's attention and concentration. *Id.* These additional records undermine the ALJ's justifications for

rejecting Dr. Warrington's opinion. Both Plaintiff and the Commissioner present contradictory interpretations of this new evidence that should be resolved by the ALJ on remand. *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000).

Plaintiff also argues that the ALJ inappropriately "cherry-picked" portions of Dr. Warrington's opinion regarding Plaintiff's manipulative limitations. An ALJ may not "cherry-pick" statements in a physician's evaluations, but must consider the entire diagnosis and observations of impairment. *Ghanim*, 763 F.3d at 1164. In this case, Dr. Warrington assessed Plaintiff as being limited to frequent fingering and occasional handling. Tr. 410. This was consistent with Plaintiff's testimony that his hands frequently shake and he has trouble holding on to objects. Tr. 57; 237. In his opinion, the ALJ accepted Plaintiff's testimony that his hands frequently shake as a result of his medication, and accordingly limited Plaintiff to only frequent fingering, but assessed no limitations to Plaintiff's handling. Tr. 24; 28.

Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Warrington's opinion that Plaintiff should be limited to only occasional handling. The ALJ's reasons for rejecting Dr. Warrington's opinion, set forth above, do not directly address why the ALJ rejected the handling limitation. To the extent that the ALJ's reason for rejecting might be encompassed by his finding that Dr. Warrington's treatment notes are inconsistent with the assessed degree of limitation, that conclusion is not supported the record. *See* Tr. 316 (noting that Plaintiff was "slightly tremulous[ ]"); 322 (noting prior "contracture release" surgery on Plaintiff's fingers); 414 ("tremors at times"); 417 (noting "Tremulousness at rest"); 434 and 443; ("Clubbing of the fingers, bilaterally,"). Nor does the record support the ALJ's finding that Dr. Warrington's opinion was inconsistent with the rest of the medical evidence regarding Plaintiff's manipulative limitations. *See* Tr. 278 (Dr. Flaming notes "weakness, numbness/tingling"); Tr.

388 (Dr. Sosa note's Plaintiff's report of chronic hand numbness and dropping things); Tr. 362 (Dr. Ramsthel observes "intention tremors"); Tr. 393 (Dr. Sosa assesses Plaintiff for numbness and tingling). The record contains numerous instances of Dr. Warrington and other medical providers directly observing Plaintiff's tremors, which does not support the ALJ's conclusion that Dr. Warrington based his assessment of Plaintiff's manipulative limitations on Plaintiff's subjective complaints. Tr. 316; 414; 417; 362. As Plaintiff notes, the ALJ's rejection of a handling limitation is inconsistent with his acceptance of Plaintiff's testimony that his hands frequently shake and the ALJ's finding that these tremors do impose from manipulative limitations. I conclude that the ALJ erred in his assessment of Dr. Warrington's opinion of Plaintiff's manipulative limitations. On remand, the ALJ should either credit Dr. Warrington's assessment of Plaintiff's handling limitations, or provide clear and convincing reasons why he rejected that opinion.

### III.    Severe Impairments

At step two of the sequential analysis, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1521. Such an impairment must last, or be expected to last, twelve months. 20 C.F.R. § 404.1509. However, the ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe, 20 C.F.R. § 404.1545(a)(2). When the ALJ proceeds beyond step two and considers all of a claimant's impairments in formulating his RFC analysis, any omission at step two is harmless error. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). To establish reversible error at step two, a claimant must show that the ALJ's RFC analysis did

not consider the contested step two impairment. *Id.* Mere demonstration of error in the ALJ's step two analysis does not establish reversible error. *Id.*

In this case, Plaintiff asserts that the ALJ failed to properly assess his sleep apnea and learning disorder as severe at step two and that the ALJ failed to account for the limitations imposed by those conditions in formulating Plaintiff's RFC.

### a. Sleep Apnea

Dr. Warrington diagnosed Plaintiff with sleep apnea and opined that the condition would leave him somnolent during the day. Tr. 412. Dr. Warrington believed that this daytime somnolence would adversely affect Plaintiff's concentration and attention, limiting his ability to perform even simple work tasks. *Id.* As previously discussed, the ALJ rejected Dr. Warrington's diagnosis of sleep apnea and COPD because Plaintiff "has not undergone a workup for sleep apnea and there is no evidence that he requires a CPAP machine." Tr. 29. The records subsequently submitted to the Appeals Council show that Plaintiff did, in fact, undergo a sleep study and was directed to use a CPAP machine to treat his sleep apnea. Tr. 441; 443.

The Commissioner contends that even if the ALJ erred in failing to include Plaintiff's sleep apnea at step two, Plaintiff cannot demonstrate any harm because the record shows that Plaintiff was receiving effective treatment for his sleep apnea and the only medical source who found that Plaintiff's sleep difficulties resulted in limitations was Dr. Warrington, whose opinion the ALJ rejected. As previously discussed, however, the ALJ failed to provide adequate reasons for rejecting Dr. Warrington's opinion as to Plaintiff's sleep apnea and its effect on Plaintiff's concentration and attention in light of the later-submitted medical records. Nor am I persuaded by the Commissioner's assertion that Plaintiff's sleep apnea did not result in limitations because he was able to get 4-6 hours of sleep with the assistance of a CPAP machine. The later-

submitted records indicate that Dr. Warrington was concerned by Plaintiff getting only 4-5 hours of sleep per night and that he was continuing to adjust Plaintiff's medications in an effort to improve Plaintiff's sleep. Tr. 418; 429 (noting that adjustments to medication might result in "longer stretches of sleep—however inadequate").

The ALJ did not consider Plaintiff's sleep apnea or the resulting somnolence in his assessment of Plaintiff's RFC. I cannot, therefore, conclude that the ALJ's decision to exclude sleep apnea as a severe impairment at step two was harmless error.

### b. Learning Disorder

Plaintiff contends that the ALJ erred by failing to include Plaintiff's learning disorder as a severe impairment at step two. As previously discussed, the ALJ erred in discounting Dr. Adler's opinion about Plaintiff's learning disability. The Commissioner argues that any that error was harmless because the ALJ included Plaintiff's cognitive limitations in the RFC, but Plaintiff contends that a restriction to SVP three or less does not adequately address Plaintiff's cognitive limitations.

Dr. Adler assessed Plaintiff with a "learning disorder, unspecified" based on "signs consistent with [Plaintiff's] report of cognitive skill impairments such as with verbal skills and math calculations." Tr. 370-71. As the ALJ noted, Dr. Adler was vague when it came to what limitations were imposed by Plaintiff's learning disorder. Tr. 30. The State Agency psychological consultants Dr. Anderson and Dr. Rethinger also assessed Plaintiff as having a learning disorder. Tr. 100; 115. Drs. Anderson and Rethinger opined that Plaintiff was able to understand "simple instructions," provided that they were "not detailed," and limited Plaintiff to "routine" tasks that were "not complex." Tr. 100-01; 115-16.

The ALJ gave "great weight" to the opinions of Drs. Anderson and Rethinger, particularly as to Plaintiff's cognitive function. Tr. 30. The ALJ assigned only partial weight to Dr. Adler's opinion, particularly with regard to the diagnosis of a learning disorder because "Plaintiff performed generally well on the mental status examination." *Id.* Nevertheless, the ALJ incorporated Plaintiff's cognitive limitations into the RFC by restricting him to jobs with an SVP of three or less and which required only limited reading. *Id.*

The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into "short and simple instructions" and "detailed" or "complex" instructions, 20 C.F.R. § 416.969a(c)(1)(iii), while the DOT uses a graduated and "finely tuned" scale. *Meissl v. Barnhart*, 403 F. Supp.2d 981, 984 (C.D. Ca. 2005). Courts in this district have previously recognized that a job's simplicity is better addressed by its GED (reasoning level) ratings, rather than by its SVP rating. *Soto-Rojas v. Comm'r*, No. 09-6218-KI, 2011 WL 39141, at *7-8 (D. Or. Jan. 6, 2011). In *Soto-Rojas*, the court noted that the SVP level in a DOT listing indicating unskilled work does not address whether a job entails only simple tasks and the ALJ's assessment limiting the claimant to "blunt, easy steps" was "not defined by, or even necessarily consistent with, an SVP of 2." *Id.* In this case, as in *Soto-Rojas*, the ALJ conflated two separate vocational considerations in formulating the RFC and in his hypothetical to the VE: the SVP level and the simplicity or complexity of the task.

Any error by the ALJ was likely harmless, however, because the VE identified a possible occupation which was consistent with the limitations identified by the state agency consultants and credited by the ALJ. Courts should not confuse the Social Security regulation's use of "detailed" in describing instructions, with the "detailed" instructions as described in the DOT. *Meissl*, 403 F. Supp.2d at 983-84. Rather, the weight of persuasive authority suggests that a

claimant's limitation to simple or routine instructions and tasks encompasses GED reasoning levels of 1 or 2. *See Xiong v. Comm'r*, No. 1:09-cv-00398-SMS, 2010 WL 2902508, at *6 (E.D. Ca. July 22, 2010)(collecting district court cases); *Meissl*, 403 F. Supp.2d at 984; *Soto-Rojas*, 2011 WL 39141, at *8. A GED reasoning level of 2 requires that the claimant be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Soto-Rojas*, 2011 WL 39141, at *8.

In this case, the psychological consultants limited Plaintiff to simple, not detailed instructions, and routine, not complex tasks. As in *Xiong*, *Miessl*, and *Soto-Rojas*, I conclude that this is consistent with a GED reasoning level of 1 or 2. At the hearing, the VE identified production assembler, DOT 706.687-010, *available at* 1991 WL 679074, as a possible job. Production assembler requires a reasoning level of only 2, which is within the limits identified by the psychological consultants and given "great weight" by the ALJ.[4] As previously discussed, the position of production assembler exists in significant numbers.

However, as I have determined that this case must be remanded to assess the additional medical records as they relate to the opinion of Dr. Warrington, the ALJ should also reformulate Plaintiff's RFC and the VE hypothetical to more accurately account for the cognitive limitations identified by Drs. Anderson and Rethinger and accepted by the ALJ.

## CONCLUSION

In sum, the ALJ erred in rejecting Dr. Warrington's opinion as to Plaintiff's sleep apnea and handling limitations. The ALJ also erred in accounting for Plaintiff's cognitive limitations

---

[4] The VE also identified car wash attendant, DOT 915.667-010, *available at* 1991 WL 687869, which similarly requires a reasoning level of 2. Car wash attendant does, however, require interaction with the public. The third task identified by the VE was sales attendant, DOT 299.677-010, *available at* 1991 WL 672643, which requires both public interaction and a reasoning level of 3.

as identified by Drs. Anderson and Rethinger in his formulation of Plaintiff's RFC and the VE hypothetical. As these errors resulted, at least in part, from the fact that some of Dr. Warrington's medical reports were not before the ALJ, I conclude that a remand is justified in order to permit the ALJ to consider the additional records, rebuttal by the Commissioner, and any additional testimony needed.

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for further administrative proceedings consistent with this opinion.

DATED this _____ day of February, 2016.

OWEN M. PANNER
United States District Judge